## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DAVID HASEBROOCK,**

    **Plaintiff,**

**v.**                                 **CASE NO:**

**KNIPPERX, INC.**

    **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DAVID HASEBROOCK, (hereinafter "Plaintiff" or "Mr. Hasebroock"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, KNIPPERX, INC. (hereinafter "Defendant," or "KnippeRX") and alleges:

## INTRODUCTION

1.    The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on age, and retaliation in violation of the Age Discrimination in Employment Act (ADEA); Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"), and the Florida Private

Whistleblower's Act, § 448.102 ("FPWA").

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his age, and retaliated against him in violation of his rights under the ADEA, FCRA and the FPWA.

3.     As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the

rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Polk County, Florida.

## **PARTIES**

8.      Plaintiff is a 75-year-old male.

9.      Plaintiff is a member of a class protected against discrimination and retaliation based on his age under the ADEA, FCRA and the FPWA.

10.     During the period from May 19, 2014, until November 29, 2021, Defendant employed Plaintiff.

11.     At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.     At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADEA, FCRA and the FPWA.

13.     The Defendant KNIPPERX, INC., is a Foreign Profit Corporation with a principal place of business located at 1 Healthcare Way Lakewood, New Jersey 08701.

14.     At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Polk County, Florida.

15.     At all times material herein, Defendant met, and continues to meet, the definition of "employer" under all applicable federal and state statutes including, but not limited to, the ADEA, FCRA and the FPWA.

16.     Accordingly, Defendant is liable under the ADEA, FCRA and the FPWA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.     On or about February 10, 2022, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on

Human Relations ("FCHR") against Defendant alleging, among other things, gender and age discrimination, and retaliation. A true and accurate copy of Plaintiff's Charge of Discrimination, dated February 10, 2022, is attached hereto, and incorporated herein as **Exhibit "A."**

19.    On or about March 29, 2022, Plaintiff amended his Charge of Discrimination to include a claim under the FCRA. A true and accurate copy of Plaintiff's Amended Charge of Discrimination, dated March 29, 2022, is attached hereto, and incorporated herein as **Exhibit "B."**

20.    On February 7, 2023, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2022-00489) against Defendant. A true and accurate copy of the EEOC's Notice of Right to Sue, dated February 7, 2023, is attached hereto, and incorporated herein as **Exhibit "C."**

21.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is also entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22.    All conditions precedent to bringing this action have been performed or have occurred.

## <u>GENERAL ALLEGATIONS</u>

23.    On October 6, 2014, Plaintiff began his employment with Eagle Pharmacy as a Staff Pharmacist, a position he held until his unlawful termination on November 29, 2021

24.    As a Staff Pharmacist, Plaintiff's responsibilities included: providing comprehensive and accurate medication screening and dispensing services; providing clinical medication information to patients and healthcare providers; managing the pharmacy technicians on a day-to-day basis; and ensuring the pharmacy complies with all policies and operating procedures as set forth by the pharmacy and governing regulatory agencies.

25.    During his tenure, Plaintiff worked with a team of other staff pharmacists, pharmacy technicians, and reported to the Pharmacist in Charge, Rodney Ford, who regarded him as an exemplary employee during his tenure with Eagle Pharmacy.

26.    On November 9, 2020, KnippeRX acquired Eagle Pharmacy.

27.    Immediately upon their acquisition, Plaintiff began experiencing

insulting ageist comments from his new coworkers and supervisors.

28.    By April 2021, Plaintiff had enough of the discriminatory work environment and lodged a complaint to Defendant's Head of Legal, Teresita Weiss, by speaking to her paralegal, Jackie Pernier.

29.    Plaintiff let Ms. Pernier know that Defendant's Director of Operations, Len Fusaro, had subjected him to discrimination, harassment, a hostile work environment, insulted him with ageist comments and forced him to work double shifts without pay.

30.    Ms. Pernier failed to take any action despite Mr. Hasebroock following up on his complaint with numerous emails and calls, which Ms. Pernier ignored.

31.    Even more alarming to Plaintiff - than the discriminating environment fostered by Defendant's management - is that Defendant's management instructed its employees to skirt dangerously close to both ethical and legal lines.

32.    This became obvious when Plaintiff noticed that thousands of pills were not properly entered into the pharmacy dispensing system, but were still being provided to customers, this concerned him and raised the first of many red flags in his mind as this is a clear violation of Florida

narcotic regulations and dispensing regulations. [1]

33.     Immediately upon noticing this issue, Plaintiff brought it to the attention of his supervisor, Rodney Ford, and Defendant's Operation Manager, Mimi Davis.

34.     To Plaintiff's surprise, both Mr. Ford and Ms. Davis were already aware of the situation and simply stated that he should just ignore the lot issue.

35.     Not willing to risk his license, Plaintiff refused to dispense any medication that was not properly entered into the dispensing system.

36.     Plaintiff continued to voice his concerns, hoping someone would finally listen before a catastrophe occurred.

37.     Defendant's management continued to ignore the problem and push Plaintiff and his coworkers to just "do as you're told."

38.     Plaintiff refused to violate any laws, rules or regulations governing his pharmacy licenses and adhered to the oath he took as a pharmacist.

---

[1] Chapter 465, Florida Statutes, is the law which governs the practice of pharmacy in the State of Florida. Chapter 499 et al., Florida Statutes, known as the Florida Drug and Cosmetic Act. In addition to the law, the Board promulgates rules to further define the mandate of the law; and Chapter 64B16, Florida Administrative Code, includes the rules promulgated by the Board of Pharmacy.

39.     In doing his job properly, Plaintiff continued to unveil violations being embraced by Defendant such as Spanish translations for some medication dosages being incorrectly translated and a practice of accepting returned medications and then reselling them to other costumers. [2]

40.     Plaintiff again voiced his frustration regarding the Company's failure to comply with basic legal and ethical requirements.

41.     This time, Defendant's management told Mr. Hasebroock to relax and not make waves.

---

[2] Chapter 499 et al., Florida Statutes, known as the Florida Drug and Cosmetic Act. Including but not limited to 499.0121(5) Storage and handling of prescription drugs; Returned, Damaged, or Outdated Prescription Drugs. (a) 1. Prescription drugs that are outdated, damaged, deteriorated, misbranded, or adulterated must be quarantined and physically separated from other prescription drugs until they are destroyed or returned to their supplier. A quarantine section must be separate and apart from other sections where prescription drugs are stored so that prescription drugs in this section are not confused with usable prescription drugs. 2.  Prescription drugs must be examined at least every 12 months, and drugs for which the expiration date has passed must be removed and quarantined. (b)    Any prescription drugs of which the immediate or sealed outer containers or sealed secondary containers have been opened or used must be identified as such and must be quarantined and physically separated from other prescription drugs until they are destroyed or returned to the supplier. (c)  If the conditions under which a prescription drug has been returned cast doubt on the drug's safety, identity, strength, quality, or purity, the drug must be destroyed or returned to the supplier, unless examination, testing, or other investigation proves that the drug meets appropriate standards of safety, identity, strength, quality, and purity. In determining whether the conditions under which a drug has been returned cast doubt on the drug's safety, identity, strength, quality, or purity, the wholesale distributor must consider, among other things, the conditions under which the drug has been held, stored, or shipped before or during its return and the conditions of the drug and its container, carton, or labeling, as a result of storage or shipping.

42.     When Plaintiff refused to ignore Defendant's flagrant violations of the laws, rules, and regulations regarding the pharmaceutical industry Defendant's management demanded that he conform to the pharmacy's new way of doing things.

43.     Left with no other choice, on June 6, 2021, Plaintiff filed several complaints with the Florida Department of Health ("DOH").

44.     Plaintiff hoped this would force Defendant's to change its practices and get on track. However, this did not change much at all.

45.     Unwilling to break the law, Plaintiff continued to push back on management's illegal practices.

46.     On November 22 and 26, 2021, in violation of the Drug Supply Chain Security Act ("DSCSA")[3], Len Fusaro illegally switched the bar codes, lot numbers and expiration dates of thousands of bottles of Finasteride 1mg[4] so that they could be dispensed.

47.     The Plaintiff brought the DSCSA violation to Mr. Fusaro'

---

[3] The Drug Supply Chain Security Act (DSCSA) outlines requirements to develop and enhance drug supply chain security by 2023. This includes product tracing requirements that went into effect in 2015 for manufacturers, repackagers, wholesale distributors and dispensers (primarily pharmacies).

[4] While at the Defendant's Lakeland warehouse pallets of this drug were marked expired but subsequently illegally repackaged with new in date lot numbers and barcodes by Len Fusaro.

attention. Mr. Fusaro became extremely abusive and said he would make sure Plaintiff was terminated.

48.     Mr. Fusaro then contacted Robert Woodruff and Teresita Weiss and demanded the Plaintiff was terminated.

49.     Mr. Fusaro then subjected Plaintiff to a taped interview where he tried to coerce Plaintiff into falsely admitting that the claim was fabricated.

50.     During the recorded interview, Mr. Fusaro accused Plaintiff of abusing a phone-in customer that had called to complain about a prescription. Plaintiff denied Mr. Fusaro's assertions and claims. Plaintiff told Mr. Fusaro that he was not going to be falsely harassed and demanded that the recorded interview be terminated.

51.     On November 26, 2021, following his recorded interview with Mr. Fusaro, Plaintiff filed a subsequent complaint with the DOH.

52.     Just three days later, on November 29, 2021, Defendant's Director Human Resources, Richard Woodruff II, MS, SPHR, SHRM-SCP, called Plaintiff to his office and abruptly terminated Plaintiff's employment.

53.     During the conversation Mr. Woodruff refused to provide any explanation for Plaintiff's termination but demanded that he sign a statement retracting his DOH complaints, Plaintiff refused to sign.

54.     This made Mr. Woodruff irate, which prompted him to start calling Plaintiff a "jackass;" a "fucking liar;" and a "senile old fart."

**COUNT I**
**AGE DISCRIMINATION IN VIOLATION OF ADEA**

55.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56.     Plaintiff's age was a determining factor in Defendant's decision to terminate him.

57.     Defendant knowingly and willfully discriminated against Plaintiff based on his age in violation of the ADEA.

58.     As a direct and proximate result of Defendant's conduct described herein, Plaintiff has suffered from a loss of income and benefits for all of which he should be compensated.

WHEREFORE, Plaintiff, DAVID HASEBROOCK, demands judgment against Defendant and requests the following relief:

A.     Back pay;

B.     Front pay;

C.     Liquidated damages pursuant to 29 U.S.C. § 626(b);

D.     Attorney's fees and costs; and

E.     Other such relief as may be appropriate to effectuate the purposes of the ADEA.

**COUNT II**
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT,**
**FLORIDA STATUTES §§ 760.01-11**
**Age Discrimination**

59.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

60.     Plaintiff is a 75-year-old male.

61.     At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

62.     Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

63.    At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

64.    At all times material herein, Plaintiff experienced insulting ageist comments from his coworkers and supervisors.

65.    Plaintiff let Ms. Pernier know that KnippeRX's Director of Operations, Len Fusaro, had subjected him to discrimination, harassment, a hostile work environment, insulted him with ageist comments and forced him to work double shifts without pay.

66.    During Plaintiff's termination Mr. Woodruff refused to provide any explanation for why Plaintiff's employment had been terminated but demanded that Plaintiff sign a statement retracting his DOH complaints, Plaintiff refused to sign.

67.    This made Mr. Woodruff irate, which prompted him to start calling Plaintiff a "jackass;" a "fucking liar;" and a "senile old fart."

68.    Defendant, as Plaintiff's employer, was obligated to guard against the harassment of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from harassment in the workplace.

69.    However, Plaintiff, was subjected to a hostile work environment because of his age through disparate treatment, demeaning comments and

behavior, and other discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents, including but not limited to Mr. Fusaro and Mr. Woodruff, as more particularly alleged hereinabove.

70. Plaintiff believed that Mr. Fusaro and Mr. Woodruff's offensive acts and statements materially altered the terms and conditions of his employment. Further, a reasonable person would have found that Mr. Fusaro and Mr. Woodruff's offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

71. Plaintiff did not welcome the offensive statements, acts, harassment, disparate treatment and did not directly or indirectly invite or solicit them by his own acts or statements.

72. At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about Mr. Fusaro and Mr. Woodruff's harassment of Plaintiff, but did not take prompt remedial action to eliminate the hostile work environment.

73. Defendant violated the FCRA by, among other things, failing to promptly correct the harassment, disparate treatment, and discriminatory conduct toward Plaintiff once it learned of it and by subjecting Plaintiff to

harassment, disparate treatment, and a hostile work environment because of his age.

74.  Plaintiff, by being subjected to this harassment, disparate treatment, discrimination, and a hostile work environment created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

75.  The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the harassment, disparate treatment, and discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

76.  As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

WHEREFORE, the Plaintiff, DAVID HASEBROOCK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, KNIPPERX, INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.     Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on his age;

B.     Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.     Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.     Award Plaintiff all other damages available under the FCRA,

including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest;

F.      Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT,
## FLORIDA STATUTES §§ 760.01-11
### Retaliation

77.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

78.     Plaintiff is a 75-year-old male.

79.     At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

80.     Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual,

association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

81.    At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

82.    Defendant subjected Plaintiff to adverse employment actions in retaliation for filing a formal grievance regarding discrimination and harassment which included actively and systematically restricting him from performing his job duties, costing him income and future opportunities, and eventually terminating his employment.

83.    The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

84.    As his employer, Defendant was obligated to guard against the harassment, disparate treatment, discrimination, and retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from harassment and discrimination in the

workplace.

85.    Defendant violated the FCRA by, among other things, failing to promptly correct the harassment, disparate treatment, discriminatory and retaliatory conduct toward Plaintiff once it learned of it.

86.    Plaintiff, by being subjected to this harassment, disparate treatment, discrimination, retaliation, and a hostile work environment created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

87.    The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the harassment, disparate treatment, discrimination, and retaliation of Plaintiff, deprived him of statutory rights under the FCRA.

88.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the

capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

WHEREFORE, the Plaintiff, DAVID HASEBROOCK, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, KNIPPERX, INC., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by retaliating against Plaintiff based on his age and demands for to promptly correct the harassment, disparate treatment, discriminatory and retaliatory conduct toward Plaintiff once it learned of it, by terminating his employment;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's retaliation against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C. Award compensatory damages to Plaintiff in a sum that will

properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's retaliatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest;

F.      Award Plaintiff her attorneys' fees, including litigation expenses, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IV
## VIOLATION OF FLORIDA PRIVATE WHISTLEBLOWER'S ACT, FLORIDA STATUTE § 448.102 ("FPWA").
### Retaliation

89.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

90.    Plaintiff opposed and refused to participate in Defendant's violation of Chapter 465, Florida Statutes, which governs the practice of pharmacy in the State of Florida, and Chapter 64B16, Florida Administrative Code, which includes the rules promulgated by the Board of Pharmacy, initially by reporting violations to his supervisor, Rodney Ford, and Defendant's Operation Manager, Mimi Davis. Not willing to risk his license, Mr. Hasebroock refused to dispense any medication that was not properly entered into the dispensing system. Later, Plaintiff reported violations to the Department of Health, thereby engaging in protected activity under the FPWA.

91.    Defendant retaliated against Plaintiff for engaging in protected activity under the FPWA when Defendant's Director Human Resources, Richard Woodruff II, called Plaintiff to his office and abruptly terminated him and demanded that he sign a statement retracting his DOH complaints. Plaintiff refused to sign.

92.    Plaintiff was injured by Defendant's violations of the FPWA, for which he is entitled to legal and injunctive relief.

**WHEREFORE,** Plaintiff demands:

A. A jury trial on all issues so triable;

B. That process issue and that this Court take jurisdiction over the case;

C. Judgment against Defendant in the amount of Plaintiff's lost wages, benefits, and other remuneration;

D. Any other compensatory damages allowable at law;

E. All costs, attorney's fees, and reasonable expenses incurred in prosecuting these claims, in accordance with Fla. Stat. §448.104; and

F. For such further relief as this Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 15th day of February 2023.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Attorneys for Plaintiff